UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

JAMES ELBERT JOHNSON,   CASE NO. 09-15363-WSS

    Debtor.   Chapter 7

JAMES ELBERT JOHNSON,

    Plaintiff,
v.   ADV. PROC. NO. 11-00029

COUGAR OIL, INC.,

    Defendant.

## ORDER ON COMPLAINT

    Earl P. Underwood, Jr. and Max Cassady, Counsel for the Plaintiff
    G. David Ray, Counsel for the Defendant

This matter came before the Court on the Plaintiff's complaint in Count One for violation of the automatic stay and discharge injunction. The Court dismissed Count Two of the complaint on October 13, 2011. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. After due consideration of the pleadings, evidence, testimony and arguments of counsel, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

The Debtor, James Elbert Johnson, through J & M Convenience, LLC, entered into a lease agreement for a convenience store located in Magnolia Springs, Alabama with the Defendant, Cougar Oil, Inc., in April 2006. Johnson originally had a partner, Mike James, who

1

obtained the beer license in his name. The store sold beer, drinks, cigarettes and gasoline. Prior to leasing the convenience store, Johnson worked at Keego Clay Products for twenty-five years, drove a truck and managed convenience stores for Price Oil Company.

Johnson sold gasoline for Cougar Oil under a consignment agreement. Cougar purchased the gasoline and retained title to it. Johnson earned 50% of the profits from the sale of gasoline. Johnson accepted credit cards and personal checks at the store, and also extended credit to customers. In the first months of operation, Johnson received $3,500 to $5,000 per month from the profit of gasoline sales. By late 2006 or early 2007, he was not earning any profit from the sale of gasoline.

According to Johnson, the procedure for paying Cougar Oil for gasoline went as follows: Johnson took readings from the gas pumps every day. He subtracted out the amount for credit card payments. The amount left after credit card sales was deposited in Cougar Oil's account at Regions Bank in Foley, Alabama. Johnson testified that during his dealings with Cougar Oil, he had written checks to Cougar Oil that did not have sufficient funds to cover them, and Cougar Oil did not prosecute him for writing NSF checks. According to Johnson, Cougar Oil would hold the NSF checks until Johnson had sufficient funds to cover the checks. On the weekends, Johnson deposited three checks for Friday, Saturday and Sunday for Cougar's share of the gas proceeds, and then on Monday would deposit the funds from the weekend, "making good" on the checks. Johnson admitted at trial that he did not have an agreement with Cougar to hold checks until he had sufficient funds in his account to cover them. Johnson deposited checks to the Cougar Oil account knowing that he did not have the funds in his account to cover them. This was his standard procedure over the two years that he dealt with Cougar Oil.

2

In late 2006, Johnson's wife was diagnosed with cancer and Johnson took her to Birmingham, Alabama for treatment. Due to his wife's treatment, he was only able to spend a few hours a week at the store during 2007. His employees operated the store, and Johnson testified that they stole inventory and took money from sales, which caused him to get behind in his payments to Cougar Oil. Mrs. Johnson died on or about December 31, 2007. Johnson received $100,000 from a life insurance policy and used some of the funds to pay taxes and stock the store. In mid 2008, Johnson suffered a heart attack, and was unable to work for most of 2008 and 2009.

Larry Jones, president of Cougar Oil, testified that Johnson had a growing arrearage from operating the store. Johnson wrote many bad checks and Cougar Oil would put it on the ledger. Jones stated that Cougar Oil never agreed to hold checks for Johnson under any verbal or written agreement. However, Jones testified that Cougar Oil did allow Johnson to make good on returned checks many times during the two years preceding his eviction. Jones testified in his 30(b)(6) deposition that allowing Johnson to make good on the checks was the normal course of dealing at that time. Johnson accepted checks from his customers and the customers' checks were sometimes returned for insufficient funds. Once Johnson got behind on his payments to Cougar Oil, he received no remittance for his 50% commission for gas sales. Jones testified that Johnson had deposited checks into the Cougar Oil account without sufficient funds to cover them on many occasions, and Cougar Oil did not turn the checks over to the District Attorney's office for prosecution. Jones stated that he did not prosecute Johnson for the NSF checks initially because Johnson was working with Cougar Oil to pay off the debt. Jones testified that the difference between the four checks that were prosecuted and previous NSF checks was that

Johnson was no longer working with Cougar to pay them back.

By April 2009, Johnson was behind in the gasoline payments to Cougar Oil. He was also behind on his lease payments for the store. Larry Jones testified that Johnson fell behind in his payments approximately $230,000. He asked Johnson for additional security for the debt owed to Cougar. Johnson gave Cougar a second mortgage on his home, and purchased a $100,000 life insurance policy on himself. In August 2009, Larry Jones sent Johnson a letter outlining his debt to Cougar Oil and Johnson's assets. Johnson agreed to begin paying down the gasoline debt at a rate of $500 per day. Johnson testified that although he paid the $500 per day, the debt to Cougar did not go down. He stated that he believed the matter was settled after this meeting and agreement.

On or about October 30, 2009, Jim Sims and Rex Jones from Cougar Oil evicted Johnson from the store. October 30, 2009 was a Friday. Prior to the eviction, Johnson had already been to the bank and deposited four checks into Cougar Oil's account. Johnson testified that one of the checks was to make up for an earlier check that was returned, and the other three checks were for gas sales for Friday, Saturday and Sunday. The total of all the checks was approximately $12,005.96. When Sims and Jones asked Johnson to vacate the premises, he told them that the eviction would force him into bankruptcy. He also told them about the checks that he had deposited that morning. They asked him to sign an agreement regarding the terms of the eviction, disposition of the gasoline and inventory remaining in the store and the transfer of the beer license to the new lessees. Johnson initially refused to sign the agreement, and Sims and Jones left. Sims later called Johnson asked him to transfer the beer license. Johnson testified that Sims said that Cougar Oil would not prosecute him for the NSF checks if he would transfer

4

Case 09-15363    Doc 39    Filed 09/07/12    Entered 09/07/12 14:51:16    Desc Main
Document      Page 4 of 14

the beer license, and Johnson agreed. Rex Jones testified that he heard Jim Sims tell Johnson that Cougar Oil would not prosecute some of the checks if Johnson would turn over the beer license. However, Jones testified that he did not know to which checks Sims referred. Jones testified that neither he nor Jim Sims had authority to make this offer to Johnson, but Jones did not stop Sims from making the offer to Johnson. Johnson was not able to make deposits to Cougar Oil's account the following Monday because he had been evicted from the store and was not able to sell the gas.

Johnson filed his chapter 7 bankruptcy proceeding on November 17, 2009. He listed the debt to Cougar Oil as a secured debt. After filing his petition, Johnson received a letter dated December 9, 2009 from Cougar Oil indicating that the letter was a statutory notice pursuant to Alabama Code §13A-9-13.2. The letter informed Johnson that the four checks deposited on October 30, 2009 totaling approximately $12,000 had been dishonored and gave Johnson 10 days to pay the full amount of the checks plus a service charge. The letter also stated that unless Johnson paid the total amount within that time period, the holder of the check would assume he had delivered the checks with the intent to defraud and would turnover the checks to the Baldwin County District Attorney for possible criminal prosecution. Larry Jones stated that he knew Johnson had no means of paying the $12,000 in full when the letter was sent.

Larry Jones testified that he does not read notices or orders from the bankruptcy court. He did not remember Cougar Oil being sanctioned in a bankruptcy case by Judge Mahoney in 2004 for garnishing wages after the discharge was entered. Jones testified that he would not have consulted with his attorney before proceeding with the statutory letter. Jones did not foreclose on Johnson's property because there was no value in the home. Jones determined the value of

5

Johnson's home by looking at his bankruptcy petition.

Johnson received his discharge on February 17, 2010. On March 10, 2009, Rex Jones of Cougar Oil signed a complaint and warrant for Johnson based on the four NSF checks. Jones testified that he did not tell the District Attorney's office about the offer that Jim Sims made to Johnson about not prosecuting the checks if Johnson turned over the beer license. Larry Jones testified that his son spoke to someone in the intake office of the District Attorney's office about prosecuting the NSF checks even though Johnson had received a discharge in bankruptcy and determined that Cougar Oil could prosecute. Larry Jones testified that Cougar Oil did not expect to be paid as a result of the NSF prosecution. The purpose of the prosecution was to prosecute for the NSF checks, not to collect on the debt. Johnson was arrested and jailed on April 5, 2010. He retained James May to represent him in the criminal proceeding. After posting bond, Johnson was released on April 7, 2010 after spending three days in jail. The case was set for trial three times because Cougar Oil failed to appear. At the last hearing, the matter was dismissed.

Johnson testified that prior to his arrest for NSF checks, he had only minor infractions of the law. In 2008 or 2009, he was charged with a NSF check when he wrote a "bad check" for his car tag renewal. He paid the amount due, and the matter was not pursued. Johnson stated that he testified that he had no previous NSF convictions in his deposition because the matter was taken care of and he did not think he was charged. In 2009, he was charged with DUI. Johnson testified that he spent about 4 hours in jail and received one year probation. In 1994, he was charged with theft because he drew 2 weeks worth of unemployment compensation after he had gone back to work. He repaid the money and the charges were dropped. Johnson admitted that he actually had six criminal cases against him prior to the Cougar Oil NSF case. In 1994, he was

charged and convicted of two NSF cases in Covington County, Alabama. He stated that he did not inform prospective employers of these convictions because they were twenty years old. In 1998, Johnson was arrested for DUI; he pled guilty, and initially received 60 day jail sentence to be served on the weekends, but his sentence was changed to three years probation. Johnson testified that he did not suffer embarrassment or humiliation from these arrests.

Johnson testified that he has been unable to find employment since his arrest. His only income is his Social Security payments. Johnson stated that he applied for work at the following places, but has not had even an interview: Greers, Advance Auto Placement, Magnolia Springs Super Foods, Piggley Wiggley, Kangaroo Store, Flash Market, Clark Oil, Walmart and Target. Johnson testified that he had no proof that these employers refused him due to the Cougar Oil prosecution. Only Danny Joiner, owner of Safety Security, turned him down due to the prosecution. Joiner acknowledged that Johnson had other charges for NSF checks and DUI, but the Cougar Oil prosecution is available on the Internet, making it more public. Johnson discovered the NSF arrest on the Internet at mugshots.com. Johnson did not seek treatment from a doctor for physical or mental stress related to the Cougar Oil prosecution.

Johnson testified that he earned $40,000 to $60,000 a year driving a dump truck. He stated that he earned $50,000 per year working for Keego Clay Products. Johnson represented that he earned $52,000 per year working for Price Oil. On cross examination, Johnson admitted that he has not earned $50,000 to $60,000 since leasing the store. Furthermore, Johnson's 2006 tax return shows that he earned approximately $22,800. His 2007 W-2 indicates that he earned $18,800. The 2008 return shows income of $11,700 from Social Security income and J&M Convenience took a loss. Johnson's 2009 return reveals income of $8,7000, and his 2010 return

7

shows income of $10,588.

Judy Newcomb was the District Attorney for Baldwin County, Alabama at the time of the Cougar Oil prosecution. She testified NSF prosecutions begin with the intake person at the clerk's office, who does not make decisions regarding probable cause for prosecution. The deal that Sims offered Johnson regarding the beer license and not prosecuting the NSF checks would be only one factor in the District Attorney's decision to proceed to trial. The prosecutor would consider all the facts of the case before going forward, and Newcomb could not give a determination on that fact alone. Newcomb stated that the District Attorney's office had a policy that criminal prosecution for NSF checks would not be barred by bankruptcy. A bankruptcy discharge alone would not have affected her decision as the District Attorney to prosecute. She stated that the statutory letter sent by Cougar Oil creates a legal presumption that aids prosecution.

## CONCLUSIONS OF LAW

The Plaintiff alleges that Cougar Oil's NSF prosecution is a willful violation of the discharge injunction under 11 U.S.C. §524.[1] Under §524(a)(2), the discharge injunction "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived". "[T]he modern trend is for courts to award actual damages for violation of §524 based on the inherent contempt power of the court." *In re Hardy*, 97 F.3d 1384, 1389 (11th Cir. 1996) citing *Walter v M&M Dodge, Inc.*

---

[1]Count one of the complaint also lists violation of the automatic stay; however, the Plaintiff refers only to the discharge injunction in its allegations and did not argue a violation of the automatic stay at trial. Therefore, the Court will not address violation of the automatic stay.

*(In re Walker)*, 180 B.R. 834, 847 (Bankr. W.D. La. 1995); *Miller v Mayer (In re Miller),* 81 B.R. 669, 679 (Bankr. M.D. Fla. 1988). The *Hardy* court relied upon the statutory contempt powers of 11 U.S.C. §105 to award damages for violation of the discharge under §524. It also adopted the two-pronged test used to determine a willful violation of the automatic stay under 11 U.S.C. §362 to determine violations of §524: (1) knowledge of the discharge injunction; and (2) intent to commit the actions which violated the discharge. *Hardy*, 97 F.3d at 1390. Courts have recognized that bankruptcy courts have the authority to enjoin the use of a state's criminal process to collect a debt from a debtor protected by the automatic stay or the discharge injunction. See *Barnette v. Evans*, 673 F.2d 1250, 1252 (11th Cir. 1982); *Evans v. Godfrey (In re Godfrey)*, 472 F.Supp. 364 (M.D. Ala. 1979); *In re Bray*, 12 B.R. 359, 363 (Bankr. M.D. Ala. 1981).

As a creditor in Johnson's bankruptcy case, Cougar Oil does not deny receiving notice of Johnson's discharge in February 2010. Johnson alleged in paragraph 11 of his complaint that Cougar Oil received notice of the discharge, and Cougar Oil admitted the allegation in its answer. The second factor, or Cougar Oil's intent to violate the discharge, is in dispute. Larry Jones, Cougar Oil's president, testified that Cougar Oil did not expect payment on its debt as a result of the NSF prosecution, and that its purpose was only to prosecute Johnson for the NSF checks, not to collect on its debt. Jones stated that he knew that Johnson did not have the funds to pay the $12,000 debt, and therefore there was no use in prosecuting Johnson for the purpose of actually collecting the debt. Jones also stated that his son, Rex Jones, spoke with a person in the District Attorney's office about proceeding with the NSF charges in light of Johnson's bankruptcy, and was told that Johnson's bankruptcy would not be a problem. Judy Newcomb, the former District

9

Attorney for Baldwin County, testified that it was the District Attorney's office policy, given the proper circumstances, to prosecute NSF criminal cases despite the defendant's bankruptcy petition. Therefore, the advice given to Rex Jones by the intake clerk is consistent with the District Attorney's policy.

The evidence presented by Johnson of Cougar Oil's intent is persuasive. After Johnson filed his bankruptcy petition in November 2009, Cougar Oil sent the letter required by Alabama Code §13A-9-13.2 on or about December 9, 2009. Under 11 U.S.C. §362(b)(1), criminal prosecutions are not barred by the automatic stay. As result, the statutory letter was not a violation of the automatic stay. Had Cougar Oil's intent been merely to prosecute Johnson for the NSF checks, it could have proceeded with having a warrant issued at that time. Instead, Cougar Oil delayed having the warrants issued until March 2010 after it received notice of Johnson's discharge in February 2010. Also significant is Cougar Oil's failure to inform the District Attorney's office about the oral agreement struck by Jim Sims with Johnson not to prosecute for the NSF checks totaling $12,000 in exchange for signing over the beer license to the store's new lessees. Newcomb testified that this agreement would have been one of the factors considered in the prosecutor's decision to proceed with the NSF checks case against Johnson. Larry Jones denies knowledge of such an agreement, but his son, Rex Jones, who was present at the October 30, 2009 eviction, heard Sims make the offer to Johnson. Rex Jones was also the person who filed the complaint and warrants for the NSF checks with the Baldwin County District Attorney's office. Based on Newcomb's testimony, evidence of such an agreement would have been relevant to the District Attorney's decision to prosecute Johnson for the NSF checks. It seems that Cougar Oil should have provided this evidence to the District

Attorney's office if its only purpose was to give the prosecutor all relevant evidence to prosecute the case.

Another indication of Cougar Oil's intent to violate the discharge injunction is the change in its course of dealings with Johnson regarding NSF checks. While Cougar Oil had no formal agreement with Johnson to hold checks until he had sufficient funds in his account to cover the checks, Larry Jones admitted that Cougar Oil's course of dealing at that time was to add returned checks to Johnson's account and allow him to pay them. The company did not prosecute Johnson for writing NSF checks prior to his bankruptcy. Jones testified that the difference between the checks issued in October 2009 and the former NSF checks was that previously Johnson was working with Cougar Oil to pay the money back. When the lease was terminated and Johnson filed for bankruptcy protection, that cooperation ended and Cougar Oil changed its policy. Cougar Oil's argument that it did not expect payment for the NSF checks because it knew that Johnson did not have the funds is not persuasive. Based on the evidence presented, the Court finds that Cougar knew about the discharge injunction and intended the actions that violated the discharge injunction. As a result, it willfully violated the discharge injunction, and is in contempt of Court for its failure to honor the injunction.

Johnson claims damages for loss of income as actual damages. In support of his loss of income claim, Johnson submitted Danny Joiner's testimony that he was unable to hire Johnson to work at his security company due to the Cougar Oil arrest. Johnson also listed a number of businesses where he has applied for work, and was not granted an interview. On direct examination, Johnson testified that he had a few minor infractions of the law prior to the NSF prosecution. On cross examination, Johnson admitted that he had approximately six criminal

11

cases against him, including NSF prosecutions, theft and DUI cases. He admitted to spending brief periods of time in jail. Johnson testified that he did not suffer embarrassment or loss of standing in the community due to these prior criminal actions. He testified that the NSF prosecution was different as it was more widely known due to his mugshot appearing on the Internet. The Court observed Johnson's demeanor and found his testimony to be less than forthcoming. Johnson's income tax returns from 2006 to 2010 reveal that his income has decreased during that time period. After considering Johnson's evidence for loss of income, the Court finds that he failed to show a causal connection between the NSF prosecution and his inability to get a job after the prosecution. Prior to the Cougar Oil prosecution, Johnson already had several criminal charges brought against him, and had spent short periods in jail. It is understandable that Mr. Joiner would not hire someone with a criminal record for his security business. However, he could not explain why the NSF prosecution, wherein the charges were dismissed, was different from Johnson's prior criminal history, which was also a matter of public record. Finally, Johnson failed to show how other variables, such as the current job market and his own health, affected his ability to get a job. Therefore, the Court finds that Johnson failed to prove his claim for loss of income.

     Johnson makes a claim for mental anguish and emotional distress, which are also actual damages. *In re Wassem*, 456 B.R. 566, 572 (Bankr. M.D. Fla. 2009). A debtor is not required to provide corroborating medical evidence of emotional distress. *Id*. citing *Dawson v. Washington Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1150 (9th Cir. 2004). As a result of Cougar Oil's violation of the discharge order, Johnson spent three days in jail with the general population. Johnson testified that he had spent a few hours in jail when charged with DUI, but

12

Case 09-15363    Doc 39    Filed 09/07/12    Entered 09/07/12 14:51:16    Desc Main
Document      Page 12 of 14

he had not spent a significant amount of time in jail.  He was also embarrassed and humiliated by the time spent in jail.  Johnson is entitled to actual damages for the emotional distress and mental anguish he suffered in the amount of $1,000.00 per day for the three days that he spent in jail for a total award of $3,000.00 for actual damages.

Johnson testified that he hired James May to represent him in the NSF prosecution, however he did not give an amount for fees and costs related to May's representation.  He has also probably incurred attorney fees and costs for this adversary proceeding.  These fees and costs could have been awarded as actual damages, but no evidence was submitted in that regard.

Punitive damages may also be awarded for contempt actions involving intentional and egregious conduct.  *Wassem*, 456 B.R. at 573.  The Court has found that Cougar Oil intentionally violated the discharge order.  According to Larry Jones' testimony, the company relied on the representation of an intake clerk in the Baldwin County District Attorney's office regarding the NSF prosecution and Johnson's discharge rather than consulting its counsel.  There is also evidence that the case was set for trial and Cougar Oil failed to appear on three separate occasions.  It seems that once Johnson hired counsel to represent himself, Cougar Oil lost its zeal for prosecuting the NSF checks.  While Cougar Oil's conduct is willful and intentional, the Court finds that it does not rise to the level of egregious conduct.  The Court is not swayed by the 2004 case involving sanctions against Cougar Oil for violating a debtor's discharge by garnishing wages.  It was one incident approximately eight years ago.  However, Cougar Oil has shown contempt for this Court's orders and the Court has awarded damages to Johnson.  In the future, Cougar Oil would do well to consult with legal counsel before filing actions against discharged debtors.

13

Based on the forgoing, the Court finds that Cougar Oil violated the Debtor's discharge injunction under 11 U.S.C. §524(a) and an award of actual damages of $3,000.00 is appropriate pursuant to 11 U.S.C. §105(a) and the Court's inherent powers. It is hereby

**ORDERED** that the relief sought in the Plaintiff's complaint Count One for violation of the automatic stay and discharge injunction is **GRANTED**, and a separate judgment for actual damages in the amount of THREE THOUSAND AND NO/100 DOLLARS ($3,000.00) shall be entered in favor of the Plaintiff, James Elbert Johnson, and against the Defendant, Cougar Oil, Inc.

Dated:   September 7, 2012

*William S. Shulman*
WILLIAM S. SHULMAN
U.S. BANKRUPTCY JUDGE